# UNITED STATES DISTRICT COURT
# DISTRICT OF SOUTH CAROLINA
# CHARLESTON DIVISION

| | |
|---|---|
| KJ Appliance Center, LLC,<br>Kenneth Johnson, Jim Brantley,<br><br>Plaintiffs,<br>v.<br><br>BSH Home Appliances Corporation,<br><br>Defendants. | Case No.: 2:19-cv-795-RMG<br><br>**ORDER AND OPINION** |

This matter is before the Court on Defendant BSH Home Appliances Corporation's ("BSH") Motion for Judgment on the Pleadings (Dkt. No. 16.). For the reasons set forth below, the Court grants in part and denies in part the motion.

I. **Background**

Kenneth Johnson and Jim Brantley formed KJ Appliance Center, LLC ("KJ") on March 5, 2018. (Dkt. No. 1 ¶ 17.) Previously, Johnson had worked for twenty years in the appliance installation business in and around Charleston. (Dkt. No. 1 ¶ 12.) Brantley had worked as a salesman in the appliance industry for roughly twenty seven years, including eleven years as a District Sales Manager for BSH from 2006 to 2017. (Dkt. No. 1 ¶ 13.) Johnson and Brantley "envisioned combining their knowledge, skills, and experience in the appliance industry to . . . cash in on their goodwill, contacts, and skills [in the Charleston area]." (Dkt. No. 1 ¶ 14.) Johnson and Brantley formulated a business plan to sell "(1) exclusively . . . BSH products, utilizing Mr. Brantley's specific knowledge of BSH's products, sales history, and knowledge of BSH-specific operational procedures; (2) Mr. Johnson's product knowledge, installation services, and connections with builders and the construction industry generally; and (3) both parties 20+ years' experience in the Charleston area as a source for geographical knowledge (for optimal site selection), customer leads, and goodwill." (Dkt. No. 1 ¶ 15.) Johnson pitched this idea to Trent

Roth, BSH's District Sales Manager in early 2018. (Dkt. No. 1 ¶ 16.) After BSH gave "the go-ahead on the concept and instructed Mr. Johnson and Mr. Brantley to go find a site," Johnson and Brantley founded KJ. (Dkt. No. 1 ¶¶ 16 – 17.) On March 7, 2018, KJ entered into two Dealer Agreements (the "Agreements")[1] with BSH whereby KJ became an authorized dealer of certain BSH products. (Dkt. No. 1 ¶ 18.)

The Agreements required KJ to establish a "bona fide 'brick and mortar'" location. (Dkt. No. 1 ¶ 19.) KJ acquired such a location and Johnson and Brantley personally guaranteed the lease for said premises. (Dkt. No. 1 ¶¶ 22 – 23.) On June 1, 2018, eight-six days after entering into the Agreements with BSH, BSH terminated the Agreements, noting that "[a]s part of BSH's strategy to remain competitive in the future, we are compelled to reorganize our authorized dealer relationships . . . ." (Dkt. No. 1 ¶¶ 24 – 25.) Both Agreements permit the parties to terminate the Agreements, with or without cause, on thirty days written notice. (Dkt. No. 10-1 § 13; Dkt. No. 10-2 § 13.) The termination provided KJ a thirty-day window during which to continue to purchase BSH products. (Dkt. No. 1 ¶ 27.)

KJ, Brantley, and Johnson (collectively the "Plaintiffs") filed the action in this Court on March 15, 2019, against Defendant BSH. Plaintiffs brought five causes of action: wrongful termination of the Agreements, breach of fiduciary duty, breach of the implied duty of good faith and fair dealing, South Carolina Unfair Trade Practices Act ("SCUTPA") violation, and promissory estoppel. Defendant moved for judgment on the pleadings, and Plaintiffs oppose the motion. (Dkt. Nos. 16, 22, 23.)

---

[1] Both agreements "substantially mirror[] each other but for details relating to the products [to be sold by KJ]." (Dkt. No. 1 ¶ 18 n. 1). Copies of the Agreements are attached to the Defendant's Answer. (Dkt. No. 10.)

## II. Legal Standard

"After the pleadings are closed—but early enough not to delay trial—a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). Rule 12(c) motions "dispose of cases in which there is no substantive dispute that warrants the litigants and the court proceeding further." *Lewis v. Excel Mech., LLC*, 2:13-CV-281-PMD, 2013 WL 4585873, at * 1 (D.S.C. Aug. 28, 2013) (quoting 5C Charles A. Wright & Arthur R. Miller, Federal Practice and Procedure, § 1368 (3d ed. 2010)). A judgment on the pleadings is only warranted if "the moving party has clearly established that no material issue of fact remains to be resolved and the party is entitled to judgment as a matter of law." *Id.* at * 2 (citations omitted).

Rule 12(c) motions limit the court's review to the pleadings and "any documents and exhibits attached to and incorporated into the pleadings." *Lewis*, 2013 WL 4585873, at * 1 (citation omitted). *See also A.S. Abell Co. v. Balt. Typographical Union No. 12*, 338 F.2d 190, 193 (4th Cir. 1964). Like motions to dismiss, Rule 12(c) motions call for the pleadings to be construed in the light most favorable to the non-moving party. *Burbach Broad. Co. v. Elkins Radio Corp.*, 278 F.3d 401, 405–06 (4th Cir. 2002). Accordingly, "[t]he court must accept all well pleaded factual allegations in the non-moving party's pleadings as true and reject all contravening assertions in the moving party's pleadings as false." *Lewis*, 2013 WL 4585873, at * 2 (citation omitted).

## III. Standing

As an initial matter, Defendant argues that individual plaintiffs Johnson and Brantley do not have standing under North Carolina[2] law to pursue the claims asserted against BSH.[3] North

---

[2] Plaintiffs argue that the Agreements' choice-of-law clauses are unenforceable. For reasons given *supra*, the Court holds otherwise.

[3] While Plaintiffs fail to address Defendant's argument in their opposition (Dkt. No. 22.), federal courts have "an obligation to review motions to ensure that dismissal is proper." *See Stevenson v. City of Seat Pleasant, Md.*, 743 F.3d 411, 416 n.3 (4th Cir. 2014). Thus, the Court will analyze Defendant's argument on its merits.

Carolina law forbids "plaintiff shareholders . . . [from] assert[ing] claims against a third party for the loss of their equity investment in the corporation." *Energy Inv'rs. Fund, L.P. v. Metric Constructors, Inc.*, 351 N.C. 331, 335 (2000). The only two exceptions are when a plaintiff: (1) alleges an injury "separate and distinct" to himself; or (2) the injuries arise out of a "special duty" running from the alleged wrongdoer to the plaintiff. *Id.* Brantley and Johnson's allegations consist of the fact that they personally guaranteed KJ's lease, funded the deposit on said lease, and that the termination of the Agreements harmed Brantley and Johnson "by way of their personal guarantees of the lease . . . ." (Dkt. No. 1 ¶¶ 23, 40.) On the one hand, "[c]onsequential damages incurred as a result of personally guaranteeing corporate debts do not constitute a separate and distinct injury from that suffered by [the] corporation." *McDaniel v. Alcon Labs., Inc.*, No. 1:06CV472, 2007 WL 4553924, at *4 (M.D.N.C. Dec. 19, 2007) (citing *Barger v. McCoy Hillard & Parks*, 346 N.C. 650, 661 (1997)). However, where there are allegations that a defendant "induced the Plaintiffs into becom[ing] guarantors," a "special duty" may exist. *Id.* at * 4; *Barger*, 346 N.C. at 661-62 ("separate and distinct" and "special duty" exceptions apply to guarantors). Brantley and Johnson make such allegations. (Dkt. No. 1 ¶ 45.) ("[BSH] affirmed to Plaintiffs prior to their entry into the Dealer Agreements and undertaking of incidental commitments that [BSH] would not be concerned with, react to, would resolve competitor-dealers' complaints, comments, or pushback relating to KJ's entry into the local market.") Thus, Brantley and Johnson do have standing to pursue their claims against BSH.

## IV. Discussion

A federal court sitting in diversity must apply the choice of law rules of the state in which it sits. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941). South Carolina "adheres to the view that the parties to a contract are to be afforded some latitude in selecting the

law that is to govern their dealings." *Associated Spring Corp. v. Roy F. Wilson & Avnet, Inc.*, 410 F. Supp. 967, 975 (D.S.C. 1976) (enforcing choice of law provision). "Generally, under South Carolina choice of law principles, if the parties to a contract specify the law under which the contract shall be governed, the court will honor this choice of law." *Nucor Corp. v. Bell*, 482 F. Supp. 2d 714, 728 (D.S.C. 2007). "However, a choice-of-law clause in a contract will not be enforced if application of foreign law results in a violation of South Carolina public policy." *Id.* Here, both Agreements contain choice of law provisions which state the respective "Agreement shall be . . . governed by and construed in accordance with the laws of the State of North Carolina, without regard to North Carolina choice of law rules, it being the intent of the parties that the internal laws of the State of North Carolina shall govern any and all disputes arising out of or relating to this Agreement." (Dkt. No. 10-1 § 14.3; Dkt. No. 10-2 § 14.3.)

Plaintiffs argue that the Court should decline to apply North Carolina law under the "public policy exception." Defendant argues, and Plaintiffs concede, that if North Carolina law governs the instant claims, Plaintiffs' claims for wrongful termination and promissory estoppel may fail. *See Allied Distribs., Inc. v. Latrobe Brewing Co.*, 847 F. Supp. 376, 378 (E.D.N.C. 1993) (generally, under North Carolina law, "a supplier is free to terminate a distributor at will, subject to any contractual restrictions") (citing *Bartolomeo v. S.B. Thomas, Inc.*, 889 F.2d 530, 533 (4th Cir. 1989) (construing North Carolina law)); *Crosby v. City of Gastonia*, 682 F. Supp. 2d 537, 547 (W.D.N.C 2010), *aff'd*, 635 F.3d 634 (4th Cir. 2011) ("[T]he clear law in North Carolina prohibits the use of promissory estoppel in an offensive manner."). Plaintiffs argue that because North Carolina law might bar these two claims, the Agreements' choice of law provisions are against public policy.

Plaintiffs' argument fails. As the Supreme Court of South Carolina explained, in order to decline to apply foreign law as "against the policy of our laws," a court must determine that the law "is against good morals or natural justice, or that for some other such reason the enforcement of it would be prejudicial to the general interests of our own citizens.'" *Rauton v. Pullman Co.*, 183 S.C. 495, 191 S.E. 416, 422 (1937) (citations omitted). In other words, it is not enough for the foreign state's laws to be against the policy underlying a law, it must also be against "good morals or natural justice," or be otherwise prejudicial. *See, e.g. Dawkins v. State*, 306 S.C. 391, 393, 412 S.E.2d 407, 408 (1991) ("The 'good morals or natural justice' of our State are not violated when foreign law is applied to preclude a tort action for money damages…even if recovery may be had upon application of South Carolina law."); *see also Rogers v. Lee*, 414 S.C. 225, 235, 777 S.E.2d 402, 407 (Ct. App. 2015) (same).

Here, while Plaintiffs identified South Carolina's general interest "in protecting its residents . . . from unfair, deceptive [sic], and abuse from billion dollar foreign corporations," (Dkt. No. 22 at 18.), there is no indication that North Carolina law, barring wrongful termination and promissory estoppel claims, violates the "good morals or natural justice" of South Carolina. *See Rogers*, 414 S.C. at 235, 777 S.E.2d at 407 (internal quotation marks omitted); *see also Hughes v. Med. Depot, Inc.*, No. 2:18-CV-2187-RMG, 2019 WL 1772401, at *2 (D.S.C. Apr. 23, 2019) ("[T]here is no indication that Georgia law, barring an action for strict liability against a seller, violates the 'good morals or natural justice' of South Carolina."). This is further supported by the fact that the "[t]he South Carolina case law finding violations of public policy pertain to 'prohibited marriages, wagers, lotteries, racing, contracts for gaming or the sale of liquors…' and interspousal immunity[.]" *Grimes v. Young Life, Inc.*, No. CV 8:16-1410-HMH, 2017 WL 5634239, at *5 (D.S.C. Feb. 17, 2017), *reconsideration denied*, No. CV 8:16-1410-HMH, 2017 WL 5640611

(D.S.C. Apr. 3, 2017), *and aff'd sub nom. Grimes v. Inner Quest Inc.*, 731 F. App'x 249 (4th Cir. 2018) (citations omitted). The public policy exception does not apply, and the Agreements are governed by North Carolina law.

Applying North Carolina law, Plaintiffs' claim of promissory estoppel must be dismissed. *Crosby*, 682 F. Supp. 2d at 547 ("[T]he clear law in North Carolina prohibits the use of promissory estoppel in an offensive manner."). However, reviewing the pleadings and their exhibits in a light most favorable to Plaintiffs, the non-moving party, as the Court must do on a Rule 12(c) motion, Plaintiffs' claim of wrongful termination, and thus breach of the implied duty of good faith and fair dealing, survive. Under North Carolina law, "a supplier is free to terminate a distributor at will, subject to any contractual restrictions." *Allied Distribs., Inc.*, 847 F Supp. at 378. But, "where a distributorship agreement of indefinite duration is generally terminable at will, a distributor who has *made substantial investments in his business* is entitled to operate the distributorship for a 'reasonable time.'" *Bartolomeo*, 889 F.2d at 533 (citing *General Tire & Rubber Co. v. Distribs., Inc.*, 253 N.C. 459, 117 S.E.2d 479, 489 (1960)) (emphasis supplied). What constitutes "a reasonable period of time depends on a variety of circumstances: amount of expenditures, length of time the distributorship has already run, potential for future profits, and past profitability; but . . . the ultimate test is not 'whether distributor has recouped his expenditures, but whether he has had a fair opportunity.'" *Id.* Here, Plaintiffs plead that BSH's termination of the Agreements after eighty-six days was not reasonable and led to a variety of losses, including, *inter alia*, "out-of-pocket costs relating to appliance displays [and] up-fitting of the premises." (Dkt. No. 1 ¶¶ 30, 33.) Plaintiffs also plead that BSH told them BSH "would not be concerned with, react to, [and] would resolve competitor-dealers' complaints, comments, or pushback relating to KJ's entry into the local market," but acted otherwise. (Dkt. No. 1 ¶ 45.) These allegations are sufficient, at this stage,

to state a claim for wrongful termination under North Carolina law. *General Tire*, 253 N.C. at 470-71; *Nike USA Inc. v. WDP Soccer Inc.*, No. 3:18-cv-374, 2018 WL 4289653, at *3 (W.D.N.C. Aug. 8, 2018) ("When that 'narrow exception' applies, 'a distributor who has made substantial investments in his business is entitled to operate the distributorship for a reasonable time.'") (citing *Bartolomeo*, 889 F.2d at 533); *Erskine et al. v Chevrolet Motors Co. et al.*, 185 N.C. 479, 117 S.E. 706, 707-09, 713-14 (1923) (viable claim existed where at-will automobile dealer contract permitted five-day notice of termination and defendants terminated contracts after two months).[4]

Plaintiffs claim for violation of SCUTPA, however, is insufficient. S.C. Code An. §§ 39-5-10 *et seq.* To state a SCUTPA claim, a plaintiff must sufficiently allege "(1) that the defendant engaged in an unlawful trade practice, (2) that the plaintiff suffered actual, ascertainable damages as a result of the defendant's use of the unlawful trade practice, and (3) that the unlawful trade practice engaged in by the defendant had an adverse impact on the public interest." *Ameristone Tile, LLC v. Ceramic Consulting Corp., Inc.*, 966 F. Supp. 2d 604, 621 (D.S.C. 2013). Under South Carolina law, "unfair or deceptive acts have an adverse impact upon the [public] if those acts have the potential for repetition." *Id.* "Potential for repetition can be demonstrated by either 'showing the same kind of actions occurred in the past, thus making it likely they will continue to occur absent deterrence' or 'showing the company's procedures created a potential for repetition

---

[4] Plaintiffs' argument that the Agreements' choice-of-law provisions are unconscionable, however, fails. In South Carolina, unconscionability is "the absence of meaningful choice on the part of one party due to one-sided contract provisions, together with terms that are so oppressive that no reasonable person would make them and no fair and honest person would accept them." *Simpson v. MSA of Myrtle Beach, Inc.*, 373 S.C. 14, 24, 644 S.E.2d 663, 668 (S.C. 2007). "A court must enforce even grossly unreasonable terms in a contract 'unless the circumstances surrounding its formation present such an extreme inequality of bargaining power, together with factors such as *lack of basic reading ability and the drafter's evident intent to obscure the term*, that the party against whom enforcement is sought cannot be said to have consented to the contract.'" *Preferred Home Inspections, Inc. v. Bellsouth Telecomm., LLC*, No. 3:14-cv-00673-MBS, 2014 WL 4793824, at *5 (D.S.C. Sept. 25, 2014) (quoting *Gladden v. Boykin*, 402 S.C. 140, 739 S.E.2d 882, 884-85 (S.C.2013)) (emphasis supplied). Plaintiffs' own allegations belie the existence of such circumstances. *See* (Dkt. 1. ¶¶ 13 – 15.) (alleging Brantley worked for Defendant eleven years and that Johnson and Brantley developed a business plan for KJ "combining their knowledge, skills, and experience in the appliance industry").

of the unfair and deceptive acts.'" *Id.* (citing *Bessinger v. Food Lion, Inc.*, 305 F.Supp.2d 574, 581 (D.S.C. 2003)). Conduct, however, "'that affects only the parties to the transaction and not the public interest provides no basis for a SCUTPA claim.'" *Id.* Here, even viewing the facts in a light most favorable to them, Plaintiffs plead no facts showing BSH acted similarly in the past nor do Plaintiffs plead nonconclusory facts showing BSH's termination of the Agreements was the result of "specific procedures or business practices that create the potential for repetition." *Machinery Solutions, Inc. v. Doosan Corp.*, No. 3:15-cv-03447, 2016 WL 2756429, at *3 (D.S.C. May 12, 2016) (dismissing SCUTPA claim in at-will distributor context and noting that "[a]bsent specific facts, a plaintiff is merely offering a speculative claim about adverse public impact"). Plaintiffs SCUTPA claim is therefore dismissed. *See Companion Prop. & Cas. Ins. Co. v. U.S. Bank Nat'l Ass'n*, No. 3:15-cv-01300-JMC, 2015 WL 7568613, at *9 (D.S.C. Nov. 24, 2015) ("The fact that an alleged misconduct occurred is not sufficient to establish that the misconduct amounts to a procedure or business practice.").

Finally, Plaintiffs fail to adequately allege that BSH breached a fiduciary duty owed to it. To establish a claim for breach of fiduciary duty, a plaintiff must allege and ultimately show the existence of a fiduciary relationship. *Azure Dolphin, LLC v. Barton*, 821 S.E.2d 711, 725 (N.C. 2018). North Carolina law, however, which governs this dispute, does not generally recognize the existence of a fiduciary relationship between a franchisee and a franchisor. *Broussard v. Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 347 (4th Cir. 1998) (no fiduciary duty between franchisee and franchisor because, in North Carolina, "'parties to a contract do not thereby become each others' fiduciaries; they generally owe no special duty to one another beyond the terms of the contract'") (citing *Branch Banking and Trust Co. v. Thompson*, 418 S.E.2d 694 ,699 (Ct. App. N.C. 1992)). And, where there is a clause, as there is in the Agreements, (Dkt. No. 10-1 § 8; Dkt.

No. 10-2 § 8.), which explicitly disclaims the existence of a fiduciary relationship, courts defer to the "written contractual instrument both parties signed, discouraging the imposition of extra-contractual obligations." *See Broussard*, 155 F.3d at 347.; *Metric Constructors, Inc. v. Bank of Tokyo-Mitsubishi, Ltd.*, 230 F.3d 1353 (4th Cir. 2000) (affirming dismissal of breach of fiduciary duty claim where the plaintiff expressly consented to the defendant's contractual disclaimer of any fiduciary relationship). For these reasons, even accepting the Plaintiffs' allegations as true, which the Court must do on Defendant's 12(c) motion, Plaintiffs have failed to state a claim for breach of fiduciary duty.

## V. Conclusion

For the foregoing reasons, the Court **GRANTS IN PART** and **DENIES IN PART** Defendant BSH Home Appliances Corporation's Motion for Judgment on the Pleadings (Dkt. No. 16). Defendant's motion is **GRANTED** as to Plaintiffs' claims for breach of fiduciary duty, SCUTPA, and promissory estoppel. Defendant's motion is otherwise **DENIED** and Plaintiffs' claims for wrongful termination and breach of the implied duty of good faith and fair dealing survive.

**AND IT IS SO ORDERED.**

Richard M. Gergel
United States District Court Judge

January 15, 2020
Charleston, South Carolina